UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JUSTIN CONRAD,              ) | Civil Action No.: 4:15-cv-3374-RMG-TER |
|                             ) | |
|      Plaintiff,             ) | |
|                             ) | |
| -vs-                        ) | |
|                             ) | |
| CAPTAIN DONNIE STONEBREAKER, ) | **REPORT AND RECOMMENDATION** |
| CAPTAIN FRITZ FORD, LT. KATURAH ) | |
| GAUSE, SGT. EVONEY SHAW, OFFICER) | |
| MICHAEL WATTERS, JR., and OFFICER ) | |
| DALLAS PHELPS,              ) | |
|                             ) | |
|      Defendants.            ) | |
| _____ ) | |

## I.   INTRODUCTION

Plaintiff, an inmate in the South Carolina Department of Corrections (SCDC) and housed at the Allendale Correctional Institution (ACI), brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to a significant risk to Plaintiff's physical safety and violated his due process rights. Presently before the court are Defendant Officer Michael Watters, Jr.'s Motion for Relief from Entry of Default (Document # 13) and Motion for Summary Judgment (Document # 38). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. This report and recommendation is entered for review by the district judge.

## II.  MOTION FOR RELIEF FROM ENTRY OF DEFAULT

### A.   Procedural History

Plaintiff filed the complaint in this action on August 24, 2015. Complaint (Document # 1). An Affidavit of Service was filed stating that Officer Watters was served with the summons, complaint, and Plaintiff's responses to Local Rule 26.01 interrogatories on Tuesday, September 1,

2015, by delivery to Quanda Mixon, "a person of age and discretion at the residence" at 224 Nash Rd., Bishopville, S.C. See Summons Returned Executed (Document # 5). Pursuant to Fed.R.Civ.P. 12(a)(1)(A)(i), Officer Watters' answer or other responsive pleading was due September 22, 2015. No answer or other responsive pleading was filed by that date, though Plaintiff did not request a clerk's entry of default. On September 28, 2015, Officer Watters filed the present motion for relief from default. He filed an answer on September 30, 2015. Plaintiff filed a response (Document # 34) in opposition to the motion for relief from entry of default, and Officer Watters filed a reply (Document # 35).

    **B.**    **Relevant Facts**

As set forth above, a copy of the summons and complaint was left with an individual named Quanda Mixon at 224 Nash Road, Bishopville, S.C., on September 1, 2015. Plaintiff submitted an Affidavit signed by Officer Watters, in which he avers that he resides at 224 Nash Road in Bishopville, South Carolina, and that Quanda Mixon also resides at that address and is over the age of eighteen. Watters Aff. ¶ 3 (Ex. to Pl. Resp.). Officer Watters also avers that, on August 11, 2015, his deposition was taken in a state court action filed by Plaintiff in this case.[1] Watters Aff. ¶ 4. On September 1, 2015, two summons and complaints were delivered to his address and given to him by Quanda Mixon. Watters Aff. ¶ 5. Officer Watters believed the papers were related to the state court action for which he had recently been deposed. Watters Aff. ¶ 5. He did not realize that the papers were for a new lawsuit and did not know that he should have given them to someone. Watters Aff. ¶ 6. He did not notify SCDC or the Insurance Reserve Fund that he had received the papers. Watters Aff. ¶ 10. He assumed that the lawyers at the August 11, 2015, deposition were familiar with them

---

[1]Officer Watters is not a party to the state court action.

and that he was not required to take any action. Watters Aff. ¶ 8.

**C.     Discussion**

Officer Watters seeks relief from default pursuant to Fed.R.Civ.P. 55(c). Rule 55(c) provides that the court may set aside the entry of default for "good cause." Fed.R.Civ.P. 55(c).[2] This "good cause" standard is liberally construed "'in order to provide relief from the onerous consequences of defaults....'" Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir.1987) (quoting Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir.1969) ("Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits.")).

As an initial matter, the court recognizes that the clerk had not made an entry of default nor had Plaintiff requested an entry of default at the time Officer Watters filed the present motion. Nevertheless, an entry of default is mandatory, not discretionary, and a party who has failed to plead or otherwise defend is considered to be in default even if the formal entry of default has not yet been made. Perez v. Wells Fargo, N.A., 774 F.3d 1329, 1337 (11th Cir. 2014) (citing 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2692 at 85 (3d ed.2004)). "So, 'a motion for relief under Rule 55(c) [setting aside a default] is appropriate ... even [when] there has not been a formal entry of default....'" Id.

The United States Court of Appeals for the Fourth Circuit has set forth the relevant factors to consider when a party in default has sought relief: (1) whether the moving party has a meritorious defense, (2) whether it acts with reasonable promptness, (3) the personal responsibility of the defaulting party, (4) the prejudice to the party, (5) whether there is a history of dilatory action, and

---

[2] Plaintiff argues the more stringent "excusable neglect" standard applicable to Fed.R.Civ.P. 60(b) motions for relief from default judgment. No default judgment has been entered or sought in this case.

(6) the availability of sanctions less drastic. Payne v. Brake, 439 F.3d 198, 204–05 (4th Cir.2006) (citations omitted).

To assert a meritorious defense, "the moving party must show that, if relieved from the order and given another chance to litigate the underlying issues, he will have meritorious arguments to deflect the opposing party's claims." Coomer v. Coomer, 217 F.3d 838 (4th Cir. 2000) (unpublished table decision) (citing Dowell v. State Fire & Cas. Auto. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993)). "A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988); see also U.S. v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982) ("all that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the court or the jury to find for the defaulting party."). Thus, the moving party does not have to prove conclusively that he would prevail, only that there is sufficient evidence to permit a court to find in his favor. See, e.g., Jones v. Phipps, 39 F.3d 158, 165 (7th Cir. 1994).

Plaintiff alleges that on September 1, 2012, while housed at the Lee Correctional Institution (LCI) Defendant Shaw allowed approximately fifty inmates, including Plaintiff, to leave the cafeteria unescorted and walk across the yard to the Darlington housing unit. Defendant Shaw failed to notify Officer Watters or Officer Watters failed to acknowledge this movement of inmates. Compl. ¶ 16. The inmates were unable to enter their housing wing because Officer Watters failed to unlock and open the wing door, which created a bottle-necking effect of inmates in the sally port. Because the inmates were unsupervised in the sally port, several inmates seized upon the opportunity and stabbed Plaintiff and another inmate at least ten times with a shank. Compl. ¶ 17. Plaintiff further alleges

that he awoke after being unconscious for a period of time to Officer Watters standing over him, but Officer Watters made no attempt to offer or ensure that Plaintiff received emergent medical aide or assistance. Compl. ¶ 19. Plaintiff was eventually transported to the hospital and treated for multiple stab wounds to his face, back, legs, and stomach, as well as a collapsed lung and remained in the hospital for approximately three weeks. Compl. ¶ 22. Plaintiff alleges that Officer Watters was deliberately indifferent to a substantial risk to Plaintiff's physical safety and violated his due process rights. Compl. ¶¶ 28, 33.

In support of establishing a meritorious defense, Officer Watters submits his deposition testimony from the state court case arising out of the same facts. There, he testified that no one told him these inmates were returning to his unit and, therefore, he did not have the doors unlocked. Watters Dep. 95. He further testified that he first learned that the inmates had returned to his unit when they were beating on the door for him to let them in. Watters Dep. 95-96. When he opened the door and let the inmates back on the wing, he then saw "blood everywhere" in the sally port, and he called first responders even though he did not see who had been assaulted because they did not come into the unit and they weren't in the sally port. Watters Dep. 96. Deliberate indifference requires a showing that the defendant knew of a substantial risk of serious harm to the inmate but disregarded that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Officer Watters' testimony, if believed, is sufficient to allow a jury or the court to find in his behalf. Therefore, he has presented sufficient evidence to establish a meritorious defense.

In addition to the meritorious defense, Officer Watters acted with reasonable promptness by filing his motion for relief from default six days after an answer was due. Further, although it was

the fault of Officer Watters and not of his attorney that the deadline was missed, no prejudice would result from relieving Officer Watters from his default and allowing this case to proceed on the merits as it is in its early stages.  No history of dilatory action has been presented and, as previously stated, Officer Watters moved for relief from default six days after the deadline.  The Fourth Circuit has a "long-held view that Rule 55(c) motions must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.' "  Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 421 (4th Cir.2010). (quoting Tolson, 411 F.2d at 130 (4th)). "Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." Tolson, 411 F.2d at 130.  Based upon the factors considered above, Officer Watters has sufficiently established good cause for failing to timely file an answer in this case and his default should be set aside to allow for a disposition on the merits. Accordingly, it is recommended that Officer Watters' Motion for Relief from Entry of Default (Document # 13) be granted.

## III.    MOTION FOR SUMMARY JUDGMENT

### A.    Relevant Facts

Plaintiff's allegations are set forth above.  Officer Watters moves for summary judgment based upon Plaintiff's alleged failure to exhaust his administrative remedies with respect to the incident on September 1, 2012. Officer Watters has presented an affidavit and supplemental affidavit of Michael Tindal, the Grievance Administrator for Evans Correctional Institution (ECI).[3]  Tindal avers that, as a grievance administrator with SCDC, he is familiar and knowledgeable of the inmate grievance policies and procedures within all SCDC facilities.  Tindal Supp. Aff. ¶ 2 (Ex. to Def.

---

[3] The court notes that the incident on September 1, 2012, occurred at the Lee Correctional Institution and Plaintiff is currently incarcerated at the Allendale Correctional Institution.

Reply). The Warden of each facility has appointed designees who are responsible for collecting grievances submitted by inmates, including inmates in administrative segregation or in a medical treatment facility. Tindal Supp. Aff. ¶ 3. Inmates are allowed to submit grievances at any time during the day or night at LCI as well as any other facility within SCDC. Grievances are then collected at least daily from the depositories. Correctional officers are discouraged from handling grievances, but should rather allow inmates to personally place the grievances into the depository. Tindal Supp. Aff. ¶ 4. When grievances are received, they are entered into the SCDC Offender Management System and given a number and then sent to the grievance coordinator for the institution. Tindal Supp. Aff. ¶ 8. A submitted grievance follows an inmate no matter what institution he is housed in because it is entered into a central system within the SCDC. Tindal Supp. Aff. ¶ 9. Tindal searched Plaintiff's filed grievances but was unable to locate any grievance related to the incident on September 1, 2012. Tindal Supp. Aff. ¶ 8. Tindal avers that inmates housed at all institutions are well acquainted with the policies and procedures involved in filing a grievance because the process is covered as part of their orientation upon entering each SCDC facility regardless of whether they have received the training before. Tindal Supp. Aff. ¶ 6. Plaintiff previously filed grievances in 2008 at LCI. Tindal Supp. Aff. ¶ 8.

Plaintiff avers that he did file a grievance following "the attack" notifying the SCDC of the serious problem with security. Pl. Aff ¶ 4 (Ex. to Pl. Resp.). As a result of the attack, Plaintiff was moved within SCDC and experienced several transfers, during which time no one responded to his grievance. Pl. Aff. ¶ 5. Plaintiff does not have a copy of his grievance due to being transferred repeatedly. Pl. Aff. ¶ 6. He avers that he never filed an appeal since it was his belief that the investigation was still open since no one ever got back to him from the initial filing. Pl. Aff. ¶ 7.

**B.     Standard of Review**

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### C.   Discussion

The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C.1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); see Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir.2001) (exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3 d 718 (7th Cir.2001) (exhaustion required even though Plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) (applying Booth v. Churner to affirm district court's denial of relief to Plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates

under any federal law, including § 1983. <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).   Exhaustion is a prerequisite to suit that must be completed prior to filing an action. <u>Anderson v. XYZ Corr. Health Servs., Inc.</u>, 407 F.3d 674, 677 (4th Cir.2005).  Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies.  <u>Id.</u> at 683 (holding an inmate's failure to exhaust administrative remedies is an affirmative defense to be both pleaded and proven by the Defendant).

      Plaintiff argues that Officer Watters has failed to meet his burden of showing that Plaintiff did not exhaust his administrative remedies because the inmate grievance coordinator avers only that he could not locate a grievance relating to the September 1, 2012, incident, not that Plaintiff did not file one. Plaintiff further argues that the exhaustion issue should not be addressed until the parties have had an opportunity to complete discovery.  The undersigned agrees that the parties should have the opportunity to complete discovery on this issue.  Accordingly, Officer Watters' motion is premature, and should be denied without prejudice and with leave to refile.

**IV.     CONCLUSION**

      For the reasons discussed above, it is recommended that Officer Watters' Motion for Relief from Entry of Default (Document # 13) be granted and his Motion for Summary Judgment (Document # 38) be denied as premature without prejudice and with leave to refile following the completion of discovery.

      s/Thomas E. Rogers, III
      Thomas E. Rogers, III
      United States Magistrate Judge

February 25, 2016
Florence, South Carolina